## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### FORT PIERCE DIVISION

### Case No. 2:20-cv-14058

_____

|  |  |
|---|---|
| | § |
| **GUSTAVO CORTEZ-ROMERO,** | § |
| **LUIS GERARDO ALVAREZ-ALONSO,** | § |
| **SABINO CAMPUZANO-DOMINGA,** | § |
| **MIGUEL ANGEL CERECEDO-RODRIGUEZ,** | § |
| **FIDENCIO MARTINEZ-GREGORIO,** | § |
| **CASIMIRO RODRIGUEZ-ESCOBAR,** | § |
| **EDUARDO RODRIGUEZ-CRUZ,** | § |
| **BERNARDO SANTIAGO-ZARAGOZA,** | § |
| **and others similarly situated,** | § |
| | § |
| **Plaintiffs,** | § |
| | § |
| **v.** | § |
| | § |
| **MARIN J CORP and** | § |
| **JORGE J. MARIN,** | § |
| | § |
| **Defendants.** | § |

<u>**COMPLAINT**</u>

### PRELIMINARY STATEMENT

1.      Plaintiffs Gustavo Cortez-Romero, Luis Gerardo Alvarez-Alonso, Sabino Campuzano-Dominga, Miguel Angel Cerecedo-Rodriguez, Fidencio Martinez-Gregorio, Eduardo Rodriguez-Cruz, Casimiro Rodriguez-Escobar, and Bernardo Santiago-Zaragoza ("Farmworkers") are migrant agricultural workers who were recruited by Marin J Corp. ("Marin J") and Jorge J. Marin (together, "Defendants") in Mexico to harvest watermelons, cantaloupes and/or pumpkins in Missouri during the summer of 2018.  Plaintiff Fidencio Martinez-Gregorio also worked with

Defendants' crew in Florida and North Carolina. By and through their agents in Mexico, Defendants recruited the Farmworkers with fraudulent promises regarding the wages and living conditions they would find upon arrival in the United States.

2.      After being forced to pay illegal recruitment fees to Defendants' agents in Mexico, the Farmworkers obtained visas through the federal government's H-2A Temporary Agricultural Worker program and traveled to Defendants' jobsite at their own expense.  Although federal law required them to reimburse the Farmworkers for their pre-employment transportation and visa expenses, Defendants instead required the Farmworkers to kick back these reimbursements to Defendants.

3.      The Farmworkers were employed harvesting, loading, transporting, grading and packing watermelons with Defendants' labor crew during the 2018 southeastern Missouri watermelon harvest.  Throughout this period, Defendants paid the Farmworkers wages well below those promised in their employment contracts and required by federal and state law.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b) (Fair Labor Standards Act ("FLSA")), and 28 U.S.C. § 1331 (subject matter jurisdiction).

5.      This Court has supplemental jurisdiction over the Farmworkers' state law causes of action pursuant to 28 U.S.C. § 1367(a), including claims for breach of contract and for violations of the Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(a), Missouri wage payment law, Mo. Rev. Stat. § 290.527, and North Carolina Wage and Hour Act, N.C.G.S. § 95-25.6.  These state law claims are so related to the federal claims that they form part of the same case or controversy.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).  Defendant Jorge J. Marin is a resident of Avon Park, Highlands County, Florida.  Defendant Marin J maintains its principal place of business in Avon Park, Highlands County, Florida.

## PARTIES

8.      Plaintiff Farmworkers are citizens of Mexico who were admitted to the United States on a temporary basis pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(ii)(a), to perform agricultural labor harvesting, transporting, loading, grading and packing watermelons, cantaloupes and pumpkins for Marin J.  The Farmworkers received H-2A visas pursuant to this statutory provision and were lawfully employed by Defendants under these visas.

9.      Defendant Marin J is a Florida corporation headquartered in Avon Park, Florida.  At all times relevant to this action, Marin J was an H-2A labor contractor within the meaning of 20 C.F.R. § 655.103(b) in that, in exchange for valuable consideration, it recruited, solicited, hired, transported, or furnished H-2A workers for agricultural employment.  At all times relevant to this action, Marin J was an employer of the Farmworkers within the meaning of the FLSA, 29 U.S.C. § 203(d), the Florida Wage and Hour Act, Fla. Stat. § 448.01, the Missouri wage payment law, Mo. Rev. Stat. § 290.500(4), and the North Carolina Wage and Hour Act, N.C.G.S. § 95-25.2(5).  Marin J hired the Farmworkers, directed and supervised their daily work activities, assigned them their tasks on a daily basis, and paid them their wages for their labor.

10.      Defendant Jorge J. Marin, also known as Jorge Jovin Marin-Gomez, is a resident of Avon Park, Florida.  He is the owner, president and sole officer of Defendant Marin J and throughout

the period relevant to this action, directed and controlled Marin J's activities on a daily basis.  At all times relevant to this action, Jorge J. Marin was an H-2A labor contractor within the meaning of 20 C.F.R. § 655.103(b) in that, in exchange for valuable consideration, he recruited, solicited, hired, transported, and furnished H-2A workers for agricultural employment.

11.     At all times relevant to this action, Jorge J. Marin was an employer of the Farmworkers within the meaning of the FLSA, 29 U.S.C. § 203(d), the H-2A regulations, 20 C.F.R. § 655.103(b), the Florida Minimum Wage Act, Fla. Stat. § 448.110, Missouri wage payment law, Mo. Rev. Stat. § 290.500(4), and North Carolina Wage and Hour Act

and the Missouri wage payment law, Mo. Rev. Stat. § 290.500(4), because, *inter alia*, he determined what tasks the Farmworkers would perform each day, supervised the Farmworkers' performance of their assigned tasks, and paid the Farmworkers their wages for their labor.  As a joint employer, Jorge J. Marin was contractually bound, along with Marin J, to the Farmworkers by the terms of their employment contracts.

## FACTS

### The Federal H-2A Visa Program

12.     The H-2A program was created by the Immigration and Nationality Act, 8 U.S.C. § 1188, and is implemented through regulations set out at 20 C.F.R. §§ 655.100 to 655.185 and 29 C.F.R. §§ 501.0 to 501.47.  The H-2A program authorizes the admission of non-immigrant workers to perform agricultural labor or services of a seasonal or temporary nature.

13.     An agricultural employer in the United States may import aliens to perform labor of a temporary nature if the United States Department of Labor ("DOL") certifies that (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of aliens will not adversely affect the wages and working conditions of similarly-

situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1), and 20 C.F.R. § 655.100. Aliens admitted in this fashion are commonly referred to as "H-2A workers."

14. Employers seeking the admission of H-2A workers must first file a temporary labor certification application with the DOL. 20 C.F.R. § 655.130. This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations. 20 C.F.R. § 655.121(a)(1). Federal regulations establish the minimum benefits, wages, and working conditions that must be offered by the petitioning employer in order to avoid adversely affecting similarly-situated U.S. workers. 20 C.F. R. §§ 655.120, 655.122 and 655.135. Among these terms are the following:

    a. For every hour or portion thereof worked during a pay period, the employer must pay the workers the highest of the adverse effect wage rate (AEWR), the prevailing wage for the work in the geographic area where the work is to be performed, the federal minimum wage, or the state minimum wage. 20 C.F.R. § 655.120. At all times relevant to this action, the AEWR was $11.29 per hour for Florida work, $13.42 per hour for Missouri work and $11.46 per hour for North Carolina work.

    b. The employer must provide housing at no charge to the H-2A workers. All employer-provided housing must meet applicable federal standards. 20 C.F.R. § 655.122(d)(1) and 20 C.F.R. § 654.400(b).

    c. The employer must either furnish free and convenient cooking and kitchen facilities or must provide each worker with three meals per day. If the employer provides meals to the workers, the charges may not exceed those

established by 20 C.F.R. § 655.173.  The allowable meal charge during the 2018 Missouri vegetable harvest season was $12.26 per day.

d.      For those workers who complete the first 50 percent of the work contract, the employer must pay for transportation costs from the worker's home to the employer's jobsite not previously reimbursed, as well as daily subsistence en route.  20 C.F.R. § 655.122(h)(1).

e.      For those workers who complete the contract period, the employer must provide or pay for transportation from the worksite to the worker's homes, as well as pay for or provide subsistence en route.  20 C.F.R. § 655.122(h)(2).

f.      All transportation provided the H-2A workers must at a minimum provide the same vehicle insurance as required under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1841 and 29 C.F.R. § 500.105 and 29 C.F.R. §§ 500.120 to 500.128.  *See* 20 C.F.R. § 655.122(h)(4).  An employer seeking to satisfy its vehicle insurance obligations by using workers' compensation in lieu of vehicle insurance or a liability bond must either ensure that the workers' compensation covers all travel or that vehicle insurance or a liability bond exists to provide coverage for travel not covered by workers' compensation.  29 U.S.C. § 1841(c) and 29 C.F.R. § 500.122(h)(4).

g.      The workers must be guaranteed employment for at least three-fourths of the workdays covered by the clearance order, including any extensions, and if this amount of work is not offered, the workers must be paid the amount they would have earned had they been employed for the guaranteed number of days.  20 C.F.R. § 655.122(i).

h.     The employer must keep accurate and adequate records with respect to the workers' earnings, the daily starting and stopping times for work and deductions from wages.  20 C.F.R. § 655.122(j).

i.     The employer must furnish each worker on payday a written statement of his hours and earnings containing, *inter alia*, the hours of work offered, the hours actually worked, and the piece-work units produced daily by the employee during that pay period.  20 C.F.R. § 655.122(k).

j.     The working conditions must comply with Federal and State minimum wage laws and health and safety laws.  20 C.F.R. § 655.135(e) and 20 C.F.R. § 501(c)(3)(iii).

k.     The employer must provide to H-2A workers, without charge or deposit charge, all tools, supplies and equipment required to perform the duties assigned.  20 C.F.R. § 655.122(f).

l.     Neither the employer nor its agents will seek or receive payment of any kind from the H-2A workers for recruitment costs.  20 C.F.R. § 655.135(j).

15.   The clearance order also functions as an employment contract between the agricultural employer and the H-2A workers.  20 C.F.R. § 655.122(q).

16.   In or about February 2018, Marin J submitted a temporary labor certification application to the Office of Foreign Labor Certification of the DOL's Employment and Training Administration seeking admission of 28 workers to harvest watermelons in central Florida from April 25, 2018 through June 3, 2018 (ETA case number H-300-18078-495864).  The temporary labor certification application was signed on behalf of Marin J by Jorge J. Marin.

17.     In or about April 2018, Marin J submitted two separate temporary labor certification applications to the Office of Foreign Labor Certification of the DOL's Employment and Training Administration seeking workers to harvest and pack watermelons in southeastern Missouri.  One application sought admission of 27 workers for employment from June 25, 2018 through August 17, 2018, with the workers scheduled to be housed at 200 Slicer Street, Kennett, Missouri 63857 (ETA case number H-300-18102-843410).  The second application requested the admission of 80 workers for employment from June 25, 2018 through October 20, 2018, with the workers scheduled to be housed at the 84 West Motel, 1433 Saint Francis Street Kennett, Missouri 63857 (ETA case number H-300-18124-947696).  Both of these temporary labor certification applications were signed on behalf of Marin J by Jorge J. Marin.

18.     In or about July 2018, Marin J submitted a temporary labor certification application to the Office of Foreign Labor Certification of the DOL's Employment and Training Administration seeking workers for employment in North Carolina harvesting apples and hemp.  The application sought admission of 15 workers to harvest apples and hemp near Hendersonville, North Carolina from August 8, 2018 through November 10, 2018 (ETA case number H-300-18169-075975). The temporary labor certification application was signed on behalf of Marin J by Jorge J. Marin.

19.     Each of the temporary labor certification applications described in Paragraphs 16, 17 and 18 explicitly and implicitly incorporated the DOL's regulations at 20 C.F.R. § 655 Subpart B, including the terms described in Paragraph 14.

20.     As part of the temporary labor certification applications described in Paragraphs 16, 17 and 18, Defendants submitted clearance orders which contained certifications that the orders described the actual terms and conditions of employment being offered, and contained all

material terms of the job, as required by 20 C.F.R. § 653.501(c)(3)(viii).  Each of these certifications was signed on behalf of Marin J by Jorge J. Marin.

21.     A true and correct copy of the clearance order (ETA case number H-300-18102-843410) submitted by Defendants as part of its request for 27 workers for employment in Missouri from June 25, 2018 through August 17, 2018 is attached as Exhibit A.

22.     A true and correct copy of the clearance order (ETA case number H-300-18124-947696) submitted by Defendants as part of its request for 80 workers for employment in Missouri from June 25, 2018 through October 20, 2018 is attached as Exhibit B.

23.     The DOL accepted the temporary labor certification applications and clearance orders submitted on behalf of Marin J as described in Paragraphs 16 through 20.  The clearance orders were circulated to local job service offices in an effort to recruit U.S. workers to fill the positions offered.

24.     On or about April 18, 2018, the DOL's National Processing Center granted in full Marin J's temporary labor certification application seeking 28 workers for employment harvesting watermelons in central Florida from April 25, 2018 through June 3, 2018.  U.S. Citizenship and Immigration Services of the Department of Homeland Security in turn issued H-2A visas to fill the manpower needs described in the temporary labor certification application and accompanying clearance order.

25.     On or about May 24, 2018, the DOL's National Processing Center granted in full Marin J's temporary labor certification application seeking 27 workers for employment harvesting and packing watermelons in Missouri from June 25, 2018 through August 17, 2018.  U.S. Citizenship and Immigration Services of the Department of Homeland Security in turn issued H-2A visas to

fill the manpower needs described in the temporary labor certification application and accompanying clearance order (Exhibit A).

26.     On or about June 8, 2018, the DOL's National Processing Center granted in full Marin J's temporary labor certification application seeking 80 workers for employment harvesting, loading, transporting, grading and packing watermelons in Missouri from June 25, 2018 through October 20, 2018.  U.S. Citizenship and Immigration Services of the Department of Homeland Security in turn issued H-2A visas to fill the manpower needs described in the temporary labor certification application and accompanying clearance order (Exhibit B).

27.     On or about July 23, 2018, the DOL's National Processing Center granted in full Marin J's temporary labor certification application seeking 15 workers for employment harvesting apples and hemp in North Carolina from August 8, 2018 through November 10, 2018.  U.S. Citizenship and Immigration Services of the Department of Homeland Security in turn issued H-2A visas to fill the manpower needs described in the temporary labor certification application and accompanying clearance order.

28.     Defendants failed to contractually forbid its agents and recruiters who they engaged to recruit potential H-2A workers to fill the manpower requirements of the temporary labor certification applications described in Paragraphs 16, 17 and 18 from seeking or receiving payments from prospective employees.

29.     Defendants recruited and hired Fidencio Martinez-Gregorio and other individuals in Mexico to fill the central Florida watermelon harvesting jobs described in Defendants' temporary labor certification application referenced in Paragraph 16.  After being recruited and hired by Defendants, Fidencio Martinez-Gregorio traveled at his own expense from his home in the Mexican state of Puebla to Matamoros, Tamaulipas, Mexico, where he was interviewed at the

U.S. Consulate and issued an H-2A visa.  Fidencio Martinez-Gregorio entered the United States at Brownsville, Texas in early May 2018 and traveled at his own expense from Brownsville to central Florida.  Upon his arrival in central Florida, Fidencio Martinez-Gregorio was employed harvesting watermelons as a member of Defendants' agricultural labor crew pursuant to Defendants' temporary labor certification application described in Paragraph 16.

30.     Fidencio Martinez-Gregorio incurred and paid a number of expenses in conjunction with obtaining an H-2A visa and entering the United States to come to work in Florida for Defendants.  These expenses included transportation from his home in Puebla to Matamoros and from Matamoros to Defendants' jobsite, lodging expenses while in Matamoros awaiting the processing of his visa application, a fee for assistance in completing his visa application and related documents, and a $6.00 (U.S.) fee paid at the U.S./Mexico border for issuance of an arrival-departure document referred to as Form I-94.  The Form I-94 was necessary for Fidencio Martinez-Gregorio to enter the United States and work for Defendants.

31.     The expenses incurred and paid by Fidencio Martinez-Gregorio as described in Paragraph 30 were incurred primarily for the benefit or convenience of Defendants within the meaning of the regulations implementing the FLSA, 29 C.F.R. § 531.3(d)(1).

32.     Defendants employed Fidencio Martinez-Gregorio harvesting watermelons in central Florida during May 2018.  The temporary labor certification application described in Paragraph 16 and the accompanying clearance order served as the employment contract between Defendants and Fidencio Martinez-Gregorio with respect to his central Florida employment.  20 C.F.R. § 655.122(q).

33.     Defendants never reimbursed Fidencio Martinez-Gregorio for the expenses described in Paragraph 30.  As a result, Fidencio Martinez-Gregorio's wages for his first workweek of

employment with Defendants' crew in central Florida were less than the federal minimum wage rate and the applicable AEWR.

34. Although Fidencio Martinez-Gregorio worked for Defendants through the conclusion of the central Florida contract period, Defendants never reimbursed him for his inbound transportation and subsistence expenses, as promised in Fidencio Martinez-Gregorio's employment contract and required by 20 C.F.R. § 655.122(h)(1).

35. Defendants transported Fidencio Martinez-Gregorio and the other members of the central Florida harvesting crew between the jobsite and their living quarters each day in various vans and buses owned by Defendants. These same vehicles were used by Defendants to transport Fidencio Martinez-Gregorio and the other crewmembers to nearby stores to purchase foodstuffs and to laundromats to wash their clothes.

36. At no time during the 2018 central Florida watermelon harvest did Defendants have in effect an insurance policy in the amounts prescribed by 29 C.F.R. § 500.121(b), or a liability bond meeting the requirements of 29 C.F.R. § 500.124, which insured either of them against liability for damage to persons or property arising from the operation of the vehicles described in Paragraph 35. Instead, Defendants sought to satisfy the vehicle insurance requirements of 20 C.F.R. § 655.122(h)(4) through a workers' compensation insurance policy issued to Harbor America Florida, a professional employer organization that Defendants hired to provide payroll and other services with respect to Defendants' employees.

37. The workers' compensation policy maintained by Harbor America Florida and referenced in Paragraph 36 did not cover all travel provided by Defendants to Fidencio Martinez-Gregorio and the other crew members. It did not cover travel during periods when the passengers were not

actively engaged in harvesting activities, such as travel to stores and laundromats, or interstate trips between jobsites in different states.

38.     Defendants failed to maintain payroll records accurately recording the compensable hours worked by Fidencio Martinez-Gregorio in the central Florida watermelon harvest.  Defendants chronically underreported the number of hours worked by Fidencio Martinez-Gregorio.  The hours and earning statements Defendants provided to Fidencio Martinez-Gregorio were based on the same inaccurate data as contained in the payroll records, and similarly underreported the number of hours worked.

39.     For his work harvesting watermelons in central Florida for Defendants, as described in Paragraph 32, Fidencio Martinez-Gregorio was paid on a piece-rate basis, as delineated in the Clearance Order.  His weekly piece-rate earnings frequently totaled less than the AEWR.  At times, these piece-rate earnings were less than the amount due under the minimum hourly wage provisions of the FLSA, 29 U.S.C. § 206(a), and the Florida Minimum Wage Act.  On such occasions, Defendants were required to supplement Martinez-Gregorio's piece-rate earnings so that they at least equaled these wage rates.  20 C.F.R. § 655.122(l)(2).  These supplemental wages are commonly referred to as a "make up" wage or "build up pay."

40.     Defendants failed to supplement Fidencio Martinez-Gregorio's piece-rate earnings from his work harvesting watermelons in central Florida so as to ensure that his weekly earnings equaled or exceeded the AEWR, as required by the contract and 20 C.F.R. § 655.122(l)(2).  As a result, Fidencio Martinez-Gregorio was paid wages less than the applicable AEWR and, on occasion, the FLSA and Florida minimum wage for his work harvesting watermelons in central Florida for Defendants.

### The Farmworkers' Recruitment, Travel and Arrival in Missouri

41.     To meet the manpower requirements for their Missouri jobs described in the temporary

labor certification applications referenced in Paragraph 17 and the accompanying clearance

orders (Exhibits A and B), Defendants recruited and hired workers both from their Florida

watermelon-harvesting operations and from Mexico.

42.     As the central Florida watermelon harvest was finishing, in or about the beginning of

June, 2018, Defendants recruited and hired Fidencio Martinez-Gregorio to work with their crew

in the southeastern Missouri watermelon harvest under the job terms set out in Defendants'

temporary labor certification applications and accompanying clearance orders relating to that

work (Exhibits A and B).  Martinez-Gregorio accepted Defendants' job offer, after which time

Defendants transported him from central Florida to Kennett, Missouri.  Upon his arrival in

southeastern Missouri, Martinez-Gregorio was employed harvesting and packing watermelons as

part of Defendants' agricultural labor crew pursuant to Defendants' temporary labor certification

applications described in Paragraph 17.

43.     Defendants recruited  Luis Gerardo Alvarez-Alonso, Sabino Campuzano-Dominga,

Miguel Angel Cerecedo-Rodriguez, Gustavo Cortez-Romero, Eduardo Rodriguez-Cruz,

Casimiro Rodriguez-Escobar and Bernardo Santiago-Zaragoza and other individuals in Mexico

to fill the Missouri watermelon harvesting and packing jobs described in the temporary labor

certification applications referenced in Paragraph 17 and the accompanying clearance orders

(Exhibits A and B).

44.     As a condition for being selected to receive H-2As visas for the watermelon harvesting

and packing jobs described in their temporary labor certification applications referenced in

Paragraph 17, Defendants required Luis Gerardo Alvarez-Alonso, Sabino Campuzano-Dominga,

- 14 -

Miguel Angel Cerecedo-Rodriguez, Gustavo Cortez-Romero, Eduardo Rodriguez-Cruz, Casimiro Rodriguez-Escobar and Bernardo Santiago-Zaragoza to each pay a recruitment fee to Defendants' agents in Mexico.

45.     After being recruited by Defendants, Luis Gerardo Alvarez-Alonso, Sabino Campuzano-Dominga, Miguel Angel Cerecedo-Rodriguez, Gustavo Cortez-Romero, Eduardo Rodriguez-Cruz, Casimiro Rodriguez-Escobar and Bernardo Santiago-Zaragoza traveled at their own expense from their respective hometowns in Mexico to Matamoros, Tamaulipas, Mexico, where they were interviewed at the U.S. Consulate and issued H-2A visas.

46.     Sabino Campuzano-Dominga, Miguel Angel Cerecedo-Rodriguez, Gustavo Cortez-Romero, Eduardo Rodriguez-Cruz, Casimiro Rodriguez-Escobar and Bernardo Santiago-Zaragoza entered the United States at Brownsville, Texas in late June 2018 and traveled at their own expense from Brownsville to Kennett, Missouri.

47.     Luis Gerardo Alvarez-Alonso entered the United States at Brownsville, Texas on July 6, 2018 and traveled at his own expense from Brownsville to Kennett, Missouri.

48.     Upon their arrival in southeastern Missouri, Luis Gerardo Alvarez-Alonso, Sabino Campuzano-Dominga, Miguel Angel Cerecedo-Rodriguez, Gustavo Cortez-Romero, Eduardo Rodriguez-Cruz, Casimiro Rodriguez-Escobar and Bernardo Santiago-Zaragoza were employed harvesting watermelons as part of Defendants' agricultural labor crew pursuant to Defendants' temporary labor certification applications described in Paragraph 17.

49.     In addition to the recruitment fees described in Paragraph 44, Luis Gerardo Alvarez-Alonso, Sabino Campuzano-Dominga, Miguel Angel Cerecedo-Rodriguez, Gustavo Cortez-Romero, Eduardo Rodriguez-Cruz, Casimiro Rodriguez-Escobar and Bernardo Santiago-Zaragoza incurred and paid additional expenses in conjunction with obtaining H-2A visas and

entering the United States to come to work in Missouri for Defendants.  These expenses included transportation from their hometowns in Mexico to Matamoros and from Matamoros to Missouri, lodging expenses while in Matamoros awaiting the processing of their visa applications, fees for assistance with completing their visa applications and related documents, and a $6.00 (U.S.) fee paid by each of them at the U.S./Mexico border for issuance of Form I-94.

50.      The expenses incurred and paid by Luis Gerardo Alvarez-Alonso, Sabino Campuzano-Dominga, Miguel Angel Cerecedo-Rodriguez, Gustavo Cortez-Romero, Eduardo Rodriguez-Cruz, Casimiro Rodriguez-Escobar and Bernardo Santiago-Zaragoza as described in Paragraphs 44 and 49 were incurred primarily for the benefit or convenience of Defendants within the meaning of the regulations implementing the FLSA, 29 C.F.R. §531.3(d)(1).

51.      Defendants failed to reimburse Luis Gerardo Alvarez-Alonso, Sabino Campuzano-Dominga, Miguel Angel Cerecedo-Rodriguez, Gustavo Cortez-Romero, Eduardo Rodriguez-Cruz, Casimiro Rodriguez-Escobar, and Bernardo Santiago-Zaragoza for the expenses described in Paragraphs 44, 49 and 50.  Although they issued checks purportedly intended to reimburse these individuals for a portion of the pre-employment expenses described in Paragraphs 44, 49 and 50, Defendants required these individuals to immediately return or kick-back these funds. As a result, the wages of Luis Gerardo Alvarez-Alonso, Sabino Campuzano-Dominga, Miguel Angel Cerecedo-Rodriguez, Gustavo Cortez-Romero, Eduardo Rodriguez-Cruz, Casimiro Rodriguez-Escobar, and Bernardo Santiago-Zaragoza for their respective first workweeks of employment with Defendants' crew in Missouri were less than the FLSA mínimum wage and the applicable AEWR.

52.      Although Sabino Campuzano-Dominga, Miguel Angel Cerecedo-Rodriguez, Gustavo Cortez-Romero, Eduardo Rodriguez-Cruz, Casimiro Rodriguez-Escobar, and Bernardo Santiago-

Zaragoza each completed 50 percent of their respective employment contracts, Defendants never reimbursed them for their inbound transportation and subsistence expenses, as promised in these individuals' employment contracts and required by 20 C.F.R. §655.122(h)(1).

## The Farmworkers' Housing in Missouri

53.     Upon their arrival in Missouri, the Farmworkers were assigned by Defendants to housing facilities in Kennett or Senath, Missouri.

54.     Defendants housed a number of crewmembers at the Budget Inn, 215 East South Bypass Avenue, Kennett.  Defendants never disclosed to the DOL as part of their temporary labor certifications that they would be housing H-2A workers at the Budget Inn.

55.     Among the workers housed at the Budget Inn were Luis Gerardo Alvarez-Alonso, Gustavo Cortez-Romero, Sabino Campuzano-Dominga, Miguel Angel Ceredo-Rodriguez, Eduardo Rodriguez-Cruz, Casimiro Rodriguez-Escobar, and Bernardo Santiago-Zaragoza.

56.     The accommodations at the Budget Inn were cramped, with many instances of four or more workers sharing a room.  Because of the large number of occupants in each room, crew members often slept two to a bed, with other roommates forced to sleep on the floor due to lack of beds.

57.     Because of overcrowding in their room at the Budget Inn, Luis Gerardo Alvarez-Alonso, Gustavo Cortez-Romero, Sabino Campuzano-Dominga, Miguel Angel Ceredo-Rodriguez, Eduardo Rodriguez-Cruz, Casimiro Rodriguez-Escobar, and Bernardo Santiago-Zaragoza developed a nightly sleeping rotation where they shared a bed with a coworker one night and slept on the floor the following night for the duration of their stay.  Luis Gerardo Alvarez-Alonso and Miguel Angel Cerecedo-Rodriguez had to sleep on the tile bathroom floor upon occasion.

58.     The room at the Budget Inn occupied by Luis Gerardo Alvarez-Alonso, Gustavo Cortez-

Romero, Sabino Campuzano-Dominga, Miguel Angel Cerecedo-Rodriguez, and Bernardo Santiago-Zaragoza was infected by bedbugs.

59.     Defendants also housed members of their agricultural labor crew at a wood frame house located at 9348 State Highway C, Unit #16, Senath, Missouri.   The wood frame house was owned by Defendant Jorge J. Marin.

60.     Among the occupants of the wood frame house was Fidencio Martinez-Gregorio.  The accommodations at the wood frame house failed to meet either the Occupational Safety and Health Administration temporary labor camp standards set out at 29 C.F.R. §1910.142, or the Employment and Training Administration migrant labor camp standards set out at 20 C.F.R §§654.404, *et seq*.  Among other things, during the period he resided at the wood frame house during the 2018 southeastern Missouri watermelon harvest, Martinez-Gregorio was allotted less than 50 square feet of living space.  In addition, the facility was structurally unsound, doors and windows were missing screens, no laundry facilities were provided, and garbage was allowed to accumulate.

61.     During a portion of the 2018 watermelon harvest, the Farmworkers and a substantial portion of the remainder of Defendants' agricultural labor crew were housed at 200 Slicer Street in Kenneth.  The facility at that location was the former Dunklin County jail and was purchased by Defendants in or about April 2018.

62.     The accommodations at the former jail failed to meet either the Occupational Safety and Health Administration temporary labor camp standards set out at 29 C.F.R. §1910.142, or the Employment and Training Administration migrant labor camp standards set out at 20 C.F.R §§654.404, *et seq*.  Among other things, the accommodations at the 200 Slicer Street site lacked adequate provisions for storage of personal items, had insufficient access to external light,

nonfunctional bathroom lights, leaking sinks, a non-usable kitchen and lacked beds for each occupant.

63.     After an investigation by the DOL's Wage and Hour Division in July 2018 and the issuance of a preliminary injunction issued by the United States District Court for the Eastern District of Missouri on August 6, 2018, Defendants relocated members of their crew, including those workers who had been previously residing at the 200 Slicer Street facility, to the 84 West Motel in Kennett.

64.     The facilities at the Budget Inn, the former jail at 200 Slicer Street and the 84 West Motel all lacked convenient cooking and kitchen facilities.  Defendants arranged for meals to be catered to the Farmworkers and other members of the crew residing in these facilities.  The charge for these meals was in excess of $12.26 per day.  Although the clearance order promised that they would be provided three meals daily, the Farmworkers frequently were not provided with breakfast.

### The Farmworkers' Employment with Defendants in Missouri

65.     Defendants employed the Farmworkers harvesting, loading, transporting, grading and packing watermelons in southeastern Missouri at various points in June, July and August 2018. The temporary labor certification applications described in Paragraph 17 and the accompanying clearance orders served as the employment contract between Defendants and the Farmworkers with respect to the Missouri employment. 20 C.F.R. §655.122(q).

66.     The Farmworkers were employed packing and loading watermelons, including at the packing facilities operated by Jones & Jones Enterprises, Inc. and/or Elite Farm & Produce.

67.     Defendants transported the Farmworkers and the other members of their Missouri watermelon crew between the jobsite and their living quarters each day in various vans and buses

owned by Defendants.  These same vehicles were used by Defendants to transport the Farmworkers and the other crewmembers to nearby stores to purchase foodstuffs, to banks to cash their checks and to laundries to wash their clothes.

68.     At no time during the 2018 Missouri watermelon harvest did Defendants have in effect a liability bond meeting the requirements of 29 C.F.R. §500.124, which insured either of them against liability for damage to persons or property arising from the operation of the vehicles described in Paragraph 67.

69.     Defendants sought to satisfy the vehicle insurance requirements of 20 C.F.R. §655.122(h)(4) through a workers' compensation insurance policy issued to Harbor America Central, a professional employer organization that Defendants hired to provide payroll and other services with respect to Defendants' employees.

70.     The workers' compensation policy maintained by Harbor America Central and referenced in Paragraph 69 did not cover all travel provided by Defendants to the Farmworkers and the other crew members.  Among other things, the policy did not cover travel during periods when the passengers were not actively engaged in harvesting activities, such as travel to stores, banks and laundromats, or interstate trips between jobsites in different states.

71.     Defendants failed to provide potable drinking water and toilet and handwashing facilities as required by law, 29 C.F.R. §1928.110, in the southeastern Missouri fields in which the Farmworkers performed hand-labor cutting, harvesting, loading, transporting, grading and loading watermelons.  Frequently, no toilet and handwashing facilities whatsoever were provided.  While drinking water was provided on occasion, Defendants failed to provide single-use drinking cups or fountains to dispense the water.  As a result, the Farmworkers were forced to drink directly from the communal water jug or share a twelve-ounce Gatorade bottle as a

drinking vessel.

72.     For their work cutting, harvesting, transporting, loading, grading, and packing watermelons in southeastern Missouri for Defendants, as described in Paragraphs 65, the Farmworkers were paid only sporadically, and the sums tendered them constituted only a fraction of the wages the Farmworkers had earned.  As provided in their employment contracts, the Farmworkers were to be paid on a piece-rate basis for their labor.  On those occasions when Defendants paid wages to the Farmworkers, the payments, as reflected on Farmworkers' wage statements, were at piece-rates lower than those set out in the Farmworkers' employment contracts.

73.     The Farmworkers' individual weekly piece-rate earnings frequently totaled less than the $13.42 AEWR for Missouri.  At times, these piece-rate earnings were less than the amount due under the minimum hourly wage provisions of the FLSA, 29 U.S.C. §206(a).   On such occasions, Defendants were required to supplement the Farmworkers' individual piece-rate earnings so that they at least equaled the mandatory wage rates.  29 C.F.R. §776.5; 20 C.F.R. §655.122(l)(2).   Defendants failed to supplement the Farmworkers' individual piece-rate earnings from their work in the Missouri watermelon harvest so as to ensure that that these weekly earnings equaled or exceeded the applicable AEWR, as required by the contract and 20 C.F.R. § 655.122(l)(2).  As a result, the Farmworkers were paid wages less than the applicable AEWR and, on occasion, less than the FLSA minimum wage for their work for Defendants in the Missouri watermelon harvest.

74.     Defendants failed to pay the Farmworkers at a rate not less than one and one-half times their regular rate for those weeks during the 2018 southeastern Missouri watermelon harvest in

which the Farmworkers were employed packing watermelons and were employed in excess of 40 hours.

75.     Defendants failed to maintain payroll records accurately recording the compensable hours worked by the Farmworkers in the southeastern Missouri watermelon harvest in violation of 20 C.F.R. § 655.122(j).  Among other things, Defendants chronically underreported the number of hours worked by the Farmworkers.  The hours and earning statements Defendants provided to the Farmworkers were based on the same inaccurate data as contained in the payroll records, and similarly underreported the number of hours worked.

76.     The Farmworkers' southeastern Missouri employment with Defendants' crew ended in August 2018, well before the October 20 end date set out in their employment contracts.  As a result, the Farmworkers were not offered employment for at least three-fourths of the workdays covered by the contracts.  Sabino Campuzano-Dominga and Bernardo Santiago-Zaragoza worked for Defendants through the conclusion of the 2018 southeastern Missouri watermelon harvest, on or about August 22, 2018.  Nevertheless, Defendants failed to pay them the amount due under the three-quarters guarantee contained in their employment contracts and set out at 20 C.F.R. § 655.122(i).

77.     Defendants failed to reimburse Sabino Campuzano-Dominga and Bernardo Santiago-Zaragoza for the full amount of the travel and subsistence expenses they incurred traveling from Missouri back to their respective homes in Mexico following the conclusion of the 2018 Missouri watermelon harvest, as required by these workers' employment contracts and 20 C.F.R. § 655.122(h)(2).

78.     As a result of Defendants' action as described in Paragraph 77, Sabino Campuzano-Dominga and Bernardo Santiago-Zaragoza were paid less than the applicable AEWR and the

FLSA minimum wage for their final week of employment with Defendants.

## Fidencio Martinez-Gregorio's Employment in North Carolina

79.     To meet the manpower requirements for their North Carolina apple and hemp harvest jobs described in the temporary labor certification applications referenced in Paragraph 18, Defendants recruited and hired workers both from their Missouri watermelon harvest crew and from Mexico.  As the southeastern Missouri watermelon harvest was finishing, in or about the end of August 2018, Defendants recruited and hired Fidencio Martinez-Gregorio to work with their crew in the North Carolina apple and hemp harvest under the job terms set out in Defendants' temporary labor certification application relating to that work.

80.     Defendants transported Fidencio Martinez-Gregorio from Missouri to Hendersonville, North Carolina, in a vehicle owned by Defendants.  Upon his arrival in western North Carolina, Fidencio Martinez-Gregorio was employed harvesting apples and hemp as part of Defendants' agricultural labor crew pursuant to Defendants' temporary labor certification application described in Paragraph 18.  Defendants employed Fidencio Martinez-Gregorio harvesting apples and hemp in western North Carolina during September and October 2018.  The temporary labor certification application described in Paragraph 18 and the accompanying clearance order served as the employment contract between Defendants and Fidencio Martinez-Gregorio with respect to his North Carolina employment.  20 C.F.R. § 655.122(q).

81.     Defendants transported Fidencio Martinez-Gregorio and the other members of the North Carolina apple and hemp-harvesting crew between the jobsite and their living quarters each day in various vans and buses owned by Defendants.  These same vehicles were used by Defendants to transport Fidencio Martinez-Gregorio and the other crewmembers from Missouri to North Carolina to begin work, to nearby stores to purchase foodstuffs, and to laundries to wash their

clothes.

82.     At no time during the 2018 North Carolina apple and hemp harvest did Defendants have in effect a liability bond meeting the requirements of 29 C.F.R. § 500.124 which insured either of them against liability for damage to persons or property arising from the operation of the vehicles described in Paragraph 81.  Instead, Defendants sought to satisfy the vehicle insurance requirements through a workers' compensation insurance policy issued to Harbor America Florida, a professional employer organization that Defendants hired to provide payroll and other services with respect to Defendants' employees.

83.     The workers' compensation policy maintained by Harbor America Central and referenced in Paragraph 82 did not cover all travel provided by Defendants to Fidencio Martinez-Gregorio and the other crew members.  It did not cover travel during periods when the passengers were not actively engaged in harvesting activities, such as travel to stores and laundromats, or interstate trips between jobsites in different states.

84.     Defendants failed to maintain payroll records accurately recording the compensable hours worked by Fidencio Martinez-Gregorio during the 2018 North Carolina apple and hemp harvest. Defendants chronically underreported the number of hours worked by Fidencio Martinez-Gregorio.  The hours and earning statements Defendants provided to Fidencio Martinez-Gregorio were based on the same inaccurate data as contained in the payroll records, and similarly underreported the number of hours worked.

85.     For his work harvesting apples and hemp in North Carolina for Defendants, as described in Paragraph 80, Fidencio Martinez-Gregorio was paid on a piece-rate basis.  His weekly piece-rate earnings frequently totaled less than the AEWR. At times, these piece-rate earnings were less than the amount due under the minimum hourly wage provisions of the FLSA, 29 U.S.C. §

206(a).   On such occasions, Defendants were required to supplement Fidencio Martinez-Gregorio's piece-rate earnings so that they at least equaled these wage rates.  29 C.F.R. §776.5 and 20 C.F.R. §655.122(l)(2).

86.     Defendants failed to supplement Fidencio Martinez-Gregorio's piece-rate earnings from his work harvesting apples and hemp in North Carolina so as to ensure that his weekly earnings equaled or exceeded the AEWR, as required by the contract and 20 C.F.R. §655.122(l)(2).  As a result, Fidencio Martinez-Gregorio was paid wages less than the applicable AEWR of $11.46 and, on occasion, the FLSA minimum wage, for his work harvesting apples and hemp in North Carolina for Defendants.

87.     Fidencio Martinez-Gregorio worked for Defendants through the conclusion of the 2018 North Carolina apple and hemp harvest, on or about October 23, 2018.  Defendants failed to reimburse Fidencio Martinez-Gregorio for the full cost of his travel and subsistence expenses incurred while traveling from North Carolina back to his home in the Mexican state of Puebla following the conclusion of the 2018 North Carolina apple and hemp harvest, as required by his employment contract and 20 C.F.R. §655.122(h)(2).

88.     Because Defendants failed to reimburse Fidencio Martinez-Gregorio for the full cost of his return travel and subsistence expenses following the conclusion of the 2018 North Carolina apple and hemp harvest, Fidencio Martinez-Gregorio was paid less than the applicable AEWR and the FLSA minimum wage for his final week of employment with Defendants.

## Collective Action Allegations

89.     All Claims set forth in Count I are brought by Farmworkers on behalf of themselves and all other similarly situated persons pursuant to 29  U.S.C.  § 216(b).  These similarly-situated individuals consist of all H-2A temporary agricultural workers employed by Defendants during

the 2018 southeast Missouri watermelon harvest pursuant to the temporary labor certifications and corresponding clearance orders described in Paragraph 17.

90.     During the 2018 Missouri watermelon harvest, from June through August 2018, Defendants employed in excess of 80 different persons, including the Farmworkers.  Defendants failed to pay the Farmworkers and other similarly situated employees the Fair Labor Standards Act minimum wage of $7.25 per hour.

91.     As delineated in Count I, these violations of the FLSA's minimum wage provisions resulted from Defendants' failure to supplement the H-2A workers' piece-rate earnings so that their respective workweek earnings equaled or exceeded the minimum wage and from Defendants' failure to reimburse the H-2A workers during their first week of employment for pre-employment expenses incurred and facilities primarily benefitting the Defendants, including the fees and expenses set out in Paragraphs 44, 49, 50, 51 and 73.

92.     Pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), the Farmworkers seek to prosecute their Fair Labor Standards Act claims as a collective action on behalf of all H-2A temporary agricultural workers employed by Defendants during the 2018 southeast Missouri watermelon harvest pursuant to the temporary labor certifications and corresponding clearance orders described in Paragraph 17.  Notice of the pendency and any resolution of this action can be provided to the members of the class by mail, print publication, radio, internet publication, social media postings in H-2A Facebook groups, direct messages to individuals via Facebook Messenger, Instagram and WhatsApp, and/or through nongovernmental organizations based in the employees' sending communities in Mexico.

## CLAIMS FOR RELIEF

### COUNT I
### (FAIR LABOR STANDARDS ACT)

93.     This count sets forth a claim by the Farmworkers for Defendants' violations of the Fair Labor Standards Act.

94.     Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), by failing to pay the Farmworkers at least $7.25 for every compensable hour of labor performed in each workweek during which they were employed.

95.     The violations of the minimum wage provisions of the FLSA as set out in Paragraph 94 resulted in part from Defendants' failure to reimburse the Farmworkers during their first workweek of employment for expenses incurred primarily for the benefit of Defendants, as set out in Paragraphs 44, 49, 50 and 51.

96.     The violations of the minimum wage provisions of the FLSA as set out in Paragraph 94 resulted in part from Defendants' failure to reimburse Sabino Campuzano-Dominga, Fidencio Martinez-Gregorio and Bernardo Santiago-Zaragoza during their final week of employment for their complete expenses in returning to their homes in Mexico after concluding their employment with Defendants in Paragraphs 78 and 88.

97.     The violations of the minimum wage provisions of the FLSA as set out in Paragraph 94 resulted in part from Defendants' failure to credit the Farmworkers with all compensable hours worked, as described in Paragraphs 39, 40, 73 and 85.

98.     Defendants violated the compensable time provisions of the FLSA, 29 U.S.C. § 203(g), by failing to pay Farmworkers for all hours the employer suffered or permitted the Farmworkers to work.

99.     Defendants violated the overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to

pay the Farmworkers at a rate not less than one and one-half times their regular rate for those workweeks during the 2018 southeastern Missouri watermelon harvest in which the Farmworkers were employed packing watermelons and worked in excess of 40 hours, as set forth in Paragraph 74.

100.    As a consequence of Defendants' violations of the minimum wage provisions of the FLSA as set forth in this count, each Farmworker and similarly situated worker is entitled to recover the amount of his unpaid minimum wages, an equal amount in liquidated damages, and attorneys' fees, pursuant to 29 U.S.C. § 216(b).

101.    As a consequence of Defendants' violations of the overtime provisions of the FLSA as set forth in Paragraphs 74 and 99, the Farmworkers are each entitled to recover the amount of his unpaid overtime wages, an equal amount in liquidated damages, and attorneys' fees, pursuant to 29 U.S.C. § 216(b).

## COUNT II
## (BREACH OF CONTRACT)

102.    This count sets forth a claim for damages by the Farmworkers for Defendants' breach of its employment contracts with the Farmworkers, as embodied in the clearance orders described in Paragraphs 16, 17 and 18.

103.    With respect to the central Florida watermelon harvest, Defendants breached their employment contract with Fidencio Martinez-Gregorio by providing terms and conditions of employment that were materially different from those promised in the clearance order described in Paragraph 16, including the following:

a.      Failing to reimburse Fidencio Martinez-Gregorio for the costs he incurred for inbound transportation between his home in Puebla and the central Florida jobsite and his subsistence en route, as set out in Paragraphs 30, 31, 33 and 34;

b.      Transporting Fidencio Martinez-Gregorio in vehicles that lacked insurance at least equal to that required under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1841 and 29 C.F.R. § 500.105 and 29 C.F.R. §§ 500.120 to 500.128, as set out in Paragraphs 35 through 37;

c.      Failing to pay Fidencio Martinez-Gregorio wages at least equal to the AEWR for his labor during the central Florida watermelon harvest, as set out in Paragraphs 39 and 40;

d.      Failing to keep and maintain accurate payroll records regarding Fidencio Martinez-Gregorio's employment during the central Florida watermelon harvest, as described in Paragraph 38;

e.      Failing to provide Fidencio Martinez-Gregorio with earning statements accurately reporting his hours worked, as described in Paragraph 38.

104.    With respect to the southeastern Missouri watermelon harvest, Defendants breached their employment contracts with the Farmworkers by providing terms and conditions of employment that were materially different from those promised in the clearance orders described in Paragraph 17 (Exhibits A and B), including the following:

a.      Failing to contractually forbid their recruiters and agents from seeking or receiving payments or other compensation from the Farmworkers and other prospective H-2A workers, as set out in Paragraph 28;

b. Failing to reimburse the Farmworkers for the costs each of them incurred for inbound transportation between their respective homes in Mexico and the southeastern Missouri jobsite and their subsistence en route, as set out in Paragraphs 49 through 52;

c. Failing to provide the Farmworkers housing at no charge that met applicable federal standards, as set out in Paragraphs 52 through 56, 58, 60 and 62;

d. Failing to either furnish the Farmworkers with free and convenient cooking and kitchen facilities or provide them with three meals per day at a rate of no more than $12.26 per day, as set out in Paragraph 64;

e. Transporting the Farmworkers in vehicles that lacked insurance at least equal to that required under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1841 and 29 C.F.R. § 500.105 and 29 C.F.R. §§ 500.120 to 500.128, as set out in Paragraphs 67 through 70;

f. Failing to pay the Farmworkers wages at least equal to the AEWR for their labor during the southeastern Missouri watermelon harvest, as set out in Paragraphs 72,73 and 76;

g. Failing to provide the Farmworkers with working conditions that complied with federal health and safety laws, including those relating to field sanitation, as set out in Paragraph 71;

h. Failing to provide the Farmworkers with work opportunities or compensation due them under the three-quarters guarantee, as set out in Paragraph 76;

i.     Failing to keep and maintain accurate payroll records regarding the Farmworkers' employment during the southeastern Missouri watermelon harvest, as described in Paragraph 75;

j.     Failing to provide the Farmworkers with earning statements accurately reporting their hours worked, as described in Paragraph 75;

k.     Failing to reimburse Sabino Campuzano-Dominga and Bernardo Santiago-Zaragoza for the complete costs each of them incurred for outbound transportation between southeastern Missouri and their respective homes in Mexico and their subsistence en route, as set out in Paragraph 76; and

l.     Directly or through their agents seeking or receiving payment from the Farmworkers for recruitment costs, as set out in Paragraph 44.

105.    With respect to the North Carolina apple and hemp harvest, Defendants breached their employment contract with Fidencio Martinez-Gregorio by providing terms and conditions of employment that were materially different from those promised in the clearance order described in Paragraph 18, including the following:

a.     Transporting Fidencio Martinez-Gregorio in vehicles that lacked insurance at least equal to that required under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1841 and 29 C.F.R. § 500.105 and 29 C.F.R. §§ 500.120 to 500.128, as set out in Paragraphs 81 through 83;

b.     Failing to pay Fidencio Martinez-Gregorio wages at least equal to the AEWR for his labor during the North Carolina apple and hemp harvest, as set out in Paragraphs 85, 86 and 88;

    c.     Failing to keep and maintain accurate payroll records regarding Fidencio Martinez-Gregorio's employment during the North Carolina apple and hemp harvest, as described in Paragraph 84;

    d.     Failing to provide Fidencio Martinez-Gregorio with earning statements accurately reporting his hours worked, as described in Paragraph 84; and

    e.     Failing to reimburse Fidencio Martinez-Gregorio for the costs he incurred for outbound transportation between North Carolina and his home in Puebla, Mexico and his subsistence en route, as set out in Paragraphs 87 and 88.

106.    Defendants' breaches of its employment contract obligations as described in this Count have caused the Farmworkers substantial injuries for which they seek damages to the fullest extent allowed in law or equity.

### COUNT III
### (FLORIDA MINIMUM WAGE ACT)
### Section X, Article 24 of the Florida Constitution & Fla. Stat. § 448.110

107.    This count sets forth a claim by Fidencio Martinez-Gregorio for Defendants' violations of the Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(a), during the 2018 central Florida watermelon harvest.

108.    By their actions described in Paragraphs 33, 39 and 40, Defendants paid Fidencio Martinez-Gregorio less wages than the wages to which he was entitled.

109.    Plaintiff Fidencio Martinez-Gregorio has complied with the notice requirements of § 448.110(6)(a), notifying Defendants of the violations described in Paragraphs 33, 39 and 40, and of Fidencio Martinez-Gregorio's intent to initiate this action.  The notice to Defendants identified the minimum wages to which Fidencio Martinez-Gregorio were entitled, estimated work dates and hours for which payment was sought, and the total amount of unpaid wages sought through

the date of the notice.  The Defendants failed to pay the unpaid wages or otherwise resolve the claim within 15 days of its receipt of the letter.

110.     As a result of Defendants' failure to pay wages as described in Paragraphs 33, 39 and 40, Fidencio Martinez-Gregorio is entitled to the full amount of his unpaid wages for his work during the 2018 central Florida watermelon harvest and an amount equal to twice the amount of unpaid wages as liquidated damages, as well as costs and attorney's fees.

## COUNT IV
### (MISSOURI WAGE PAYMENT LAW)
### Mo. Rev. Stat. § 290.527

111.     This count sets forth a claim by the Farmworkers for Defendants' violations of the Missouri wage payment law, Mo. Rev. Stat. § 290.527, during the 2018 southeastern Missouri watermelon harvest.

112.     By their actions described in Paragraphs 49, 50, 51, 72, 73 and 76, Defendants paid the Farmworkers less wages than the wages to which they were entitled.

113.     As a result of Defendants' failure to pay wages as described in Paragraphs 49, 50, 51, 72, 73 and 76, the Farmworkers are entitled to the full amount of their unpaid wages for their work during the 2018 southeastern Missouri watermelon harvest and an amount equal to twice the unpaid wages as liquidated damages, as well as costs and attorney's fees.

## COUNT V
### (NORTH CAROLINA WAGE AND HOUR ACT)
### N.C.G.S. § 95-25.6

114.     This count sets forth a claim by Fidencio Martinez-Gregorio for Defendants' violations of the North Carolina Wage and Hour Act, N.C.G.S. § 95-25.6, during the 2018 North Carolina apple and hemp harvest.

115.    By their actions described in Paragraphs 85 through 88, Defendants failed to pay Fidencio Martinez-Gregorio at least the applicable AEWR on his regular payday, as required by the North Carolina Wage and Hour Act.

116.    As a result of Defendants' failure to pay wages as described in Paragraphs 85 through 88, Fidencio Martinez-Gregorio is entitled to the full amount of his unpaid wages for his work during the 2018 North Carolina apple and hemp harvest and an amount equal to the amount of unpaid wages as liquidated damages, in accordance with N.C.G.S. § 95-25.22.

### PRAYER FOR RELIEF

WHEREFORE, the Farmworkers request that this Court enter an order:

a.    Allowing this action to proceed as a representative action pursuant to 29 U.S.C. §216(b) for all H-2A workers employed by Defendants in Missouri during the 2018 watermelon harvest and whose wages were below the FLSA minimum wage;

b.    Ordering that notice of the lawsuit be issued in an effective manner to the members of the putative class described in Paragraph 92 so that similarly-situated employees may promptly file consent forms and join this action;

c.    Declaring that Defendants, by the acts and omissions described above, violated the Farmworkers' rights under the FLSA, as set forth in Count I;

d.    Granting judgment in favor of the Farmworkers and against Defendants, jointly and severally, on their Fair Labor Standards Act claims set forth in Count I and awarding each of the Farmworkers his unpaid minimum wages and an equal amount in liquidated damages;

e.    Granting judgment in favor of those similarly situated who consent to join this action on their Fair Labor Standards Act claims and awarding each worker the amount of his unpaid minimum wages, along with an equal amount as liquidated damages;

f.      Granting judgment in favor of Farmworkers and against Defendants, jointly and severally, and awarding each of these Farmworkers his unpaid overtime wages and an equal amount in liquidated damages, and attorney's fees;

g.      Granting judgment in favor of the Farmworkers and against Defendants, jointly and severally, on the breach of contract claims set forth in Count II, and awarding each of the Farmworkers his actual and compensatory damages;

h       Granting judgment in favor of Fidencio Martinez-Gregorio and against Defendants, jointly and severally, on his claims under the Florida Minimum Wage Act set forth in Count III and awarding Fidencio Martinez-Gregorio his unpaid wages and an amount equal to twice these unpaid wages as liquidated damages, as well as costs and attorney's fees;

i.      Granting judgment in favor of the Farmworkers and against Defendants, jointly and severally, on their claims under the Missouri wage payment law forth in Count IV and awarding each of the Farmworkers his unpaid wages and an amount equal to twice these unpaid wages as liquidated damages, as well as costs and attorney's fees;

j.      Granting judgment in favor of Fidencio Martinez-Gregorio and against Defendants, jointly and severally, on his claims under the North Carolina Wage and Hour Act set forth in Count V and awarding Fidencio Martinez-Gregorio his unpaid wages and an amount equal to these unpaid wages as liquidated damages, as well as costs and attorney's fees;

k.      Awarding the Farmworkers the costs of this litigation; and

l.      Granting such relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

The Farmworkers demand a trial by jury on each and every claim set forth herein.

Respectfully submitted,

**_/s/ Gregory S. Schell_**
Gregory S. Schell
Florida Bar Number 287199
Southern Migrant Legal Services
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Boulevard
Suite 135
Nashville, Tennessee  37217
Telephone:      (615) 538-0725
Facsimile:       (615) 366-3349
Email: gschell@trla.org